# REPORTS.

## GRAFTON,

### JULY TERM, A. D. 1854.

MURCH *v.* THE CONCORD RAILROAD CORPORATION.

29    9<br>71   524<br>71   532<br><br>29    9<br>74   107

A railroad company, by giving permission to another railroad company to use a part of their track, do not bind themselves to make their track safe, nor to put it in repair, nor to make any change in its existing state.

Such a company, by contracting to let to another company the use of their track, are under no duty to the passengers of the other railroad. The claim of such passenger, if injured, is on the company with whom he contracts.

If a railroad is a public highway, the owners are liable, like towns, for all injuries sustained from defects in their road, by persons travelling, either on foot or in their own carriages, or in those of other persons.

A railroad, as such, is not necessarily a public highway. If a party's rights depend on the fact that such road is a public highway, that fact must be alleged.

The owners of railroads which are public highways, are bound to make such landings or places of access to their roads, as are necessary for the public accommodation, and to keep them in a suitable and safe state for the accommodation of the persons who may be reasonably expected to use them. They are not bound to do anything where no passing can be reasonably expected.

Railroad companies, though they are carriers of passengers by their passenger trains, are not to be regarded as common carriers of passengers by their freight trains, unless they make it an habitual business.

In an action upon the case for negligence, the plaintiff cannot recover, if his own negligence has, in any degree, contributed to cause his injury.

CASE. The Concord Railroad Corporation was summoned to answer Harvey Murch, of, &c., in a plea of the case,

for that the defendants, at the time of committing the griev-
ances hereinafter mentioned and before, were and now are the
owners and proprietors of a certain railroad, called the Con-
cord Railroad, for the conveyance of passengers in the cars
of the said Concord Railroad Corporation, and in the cars
of such other railroad corporations as the defendants permit
to use their railroad for that purpose, and were then and
now are, bound by law to have their said railroad so con-
structed and kept in such a state of repair, that all persons
may, to be conveyed as passengers as aforesaid, safely go
to and get into the cars of the said Concord Railroad Cor-
poration, and into the cars of such other railroad corpora-
tions as are rightfully in the use of the said Concord Rail-
road, for the purpose aforesaid, at all such places as the said
Concord Railroad Corporation, or such other railroad cor-
porations as are in the rightful use of said Concord Rail-
road for the purpose aforesaid, by permission of said Con-
cord Railroad Corporation, receive and take in persons, to
be conveyed as passengers as aforesaid, and for that, at the
time of committing the grievances hereinafter mentioned,
and before and since, a certain other railroad corporation,
called the Northern Railroad, were in the rightful use of
said Concord Railroad, by permission of the said Concord
Railroad Corporation, for the carriage and conveyance of
passengers in the cars of the said Northern Railroad, and
for that, on the 16th day of November, A. D. 1849, the said
Northern Railroad, by request of the plaintiff, agreed to
convey him, a passenger in the cars of the said Northern
Railroad, from Concord, in, &c., to Franklin, in, &c., for a
certain price, to be paid to the said Northern Railroad,
and on said 16th, &c., the cars of the said Northern Rail-
road, in which the said Northern Railroad had agreed as
aforesaid to convey the plaintiff, as a passenger as aforesaid,
were standing on the said Concord Railroad, by and below
the freight depot of the said Concord Railroad Corporation,
at, &c., a place where the said Northern Railroad, by per-

Murch v. The Concord Railroad Corporation.

mission of said Concord Railroad Corporation, took in and received passengers, to be conveyed in the cars of the said Northern Railroad; and the plaintiff, while the said cars of the said Northern Railroad were standing on the said Concord Railroad, at the place aforesaid, by request of the said Northern Railroad, as it was necessary for him to do, went on to the said Concord Railroad, at the place where the said cars of the said Northern Railroad were standing as aforesaid, and by the side of the cars of the said Northern Railroad, for the purpose of getting into the same, to be conveyed as a passenger as aforesaid, from said Concord to said Franklin. Yet the railroad of the said Concord Railroad Corporation was not so constructed and in such a state of repair, at said place, that the plaintiff could safely go to and get into the said cars of the said Northern Railroad as aforesaid, but, on the contrary, was so constructed and in such a state of repair, by reason of holes or openings left in the said Concord Railroad, where the track of the same crossed over and above a highway, where the said cars of the Northern Railroad were standing as aforesaid, and where the said plaintiff was going on said Concord Railroad as aforesaid, to get into the cars of the said Northern Railroad as aforesaid, to be conveyed as a passenger therein as aforesaid, that the plaintiff, in going on said Concord Railroad as aforesaid, at the place aforesaid, and for the purpose aforesaid, fell into and down one of the said holes or openings in the said Concord Railroad, a great distance, to wit, the distance of fifteen feet, and the body of the plaintiff was thereby then and there greatly bruised and wounded, and his bones badly broken, and several of his teeth, to wit, six teeth of the plaintiff, were broken and knocked out, and the plaintiff, in consequence thereof suffered great pain of body and anguish of mind, and was unable for a long space of time, to wit, from said time hitherto, to transact and perform his necessary labor and business, and was and has been put to great expense for medicine, nursing and atten-

dance for himself, and has expended large sums of money therefor, to wit, &c., all which, &c.

Plea, the general issue.

It appeared in evidence that on the evening of the 16th of November, 1849, one of the conductors of the freight trains on the Northern Railroad, agreed to take the plaintiff upon his train, which was to leave Concord about two o'clock the next morning, and convey him to Franklin. The train was then standing upon the Concord Railroad track, about 1,200 feet from the place of connection between the Concord Railroad and the Northern Railroad, and upon that portion of the track of the Concord Railroad, where the Northern freight train is generally left by the Concord road, when brought from Manchester and places south, to Concord, to be taken from thence over the Northern road.

The Concord Railroad track was made over a passway, about 1000 feet south of the passenger depot, and 200 feet south of the freight depot at Concord. This passway was 45 feet one way and 17 the other, and 12 feet deep. Stringers were laid across it, and crosswise of them were placed sleepers 20 to 30 inches apart, and upon the sleepers were laid the rails of the road. The freight train extended over this passway, the larger part and head of the train being above the passway.

On the next morning, before two o'clock, it being then dark, the plaintiff, going to take passage on the train, according to the agreement with the conductor, walked along to the Passumpsic train, which was attached to the lower end of the Northern train, and inquired of the Passumpsic conductor where the Northern conductor was, and on being informed that he was at the head of his train, passed up towards the head of the Northern train, and on coming to the passway, fell through it, between the sleepers, down upon the highway below. By the fall his lips were cut, two of his teeth broken, his head severely bruised, and he was also otherwise injured.

In regard to the manner in which the passway was made, J. A. Weston testified that he was assistant engineer on the Concord Railroad, at the time the passway was made, and that he recollected a conversation as to the manner in which it was left, and that the chief engineer and superintendent stated that the object in leaving the pass way open was to keep cattle from going down upon the road; that the cattle guards on the road are built in the same way, only that they are smaller. It appeared that since this accident the corporation have caused the passway to be covered with plank.

At the time of the accident there was a business connection between the Concord and Northern roads, by contract between them, which contract related to passengers and freight, passing from stations on the Northern road to stations below Concord, on the Concord road, and on roads below, in which the Northern and Concord roads had a joint interest, and each received a portion of the tariff. But there was no contract between them, in respect to passengers going upon the Northern road above, starting from Concord and stopping at Concord. On the arrival of the Northern trains at Concord, the Concord road took the trains over their road south, and also returned them from the south to Concord, where the Northern road took them themselves over their own road. The freight train of the Northern road upon which the plaintiff was to go, was upon the Concord track, in accordance with the terms of agreement between the two corporations.

There was no evidence that any passengers had ever taken a passage on the Northern train at or below the passway.

It appeared that both roads had been in the habit of occasionally transporting some passengers upon the freight trains, when they were anxious to go; but some of the conductors were directed not to permit it, except in cases of necessity. They were also directed to state to the passengers

that if they went upon the freight trains, it must be at their own risk.   Sometimes this information was communicated to the passengers, and sometimes it was not.   No statement of the kind was made to the plaintiff, nor had the conductor of the Northern road, who had charge of the train at this time, received any such instructions.

It appeared that the passengers on the freight trains paid the same fare as on the passenger trains, for which the conductors accounted to the road.   It also appeared that the passengers sometimes bought tickets when they went on the freight trains.

The counsel for the defendants contended that the evidence did not sustain the declaration.   The court directed a verdict for the defendants, on which it was agreed that judgment should be entered, or the verdict set aside and judgment entered for such damages as might be assessed by the superior court, an auditor or a jury, as the plaintiff might elect, according as the opinion of the superior court should be upon the whole case.

*W. H. Bartlett* (with whom was *Perley,*) for the plaintiff.

Upon the defendants' demurrer to the evidence, the only question is, whether it tended to support the allegations of the declaration, the sufficiency of which is not in question.

I.   The substantial allegations are,

1.   That the defendants are proprietors of a railroad for the transportation of their own passengers and those of other railroads, using said road by the defendants' permission, for passenger carriage.

2.   That they are bound to have all places, where such passengers, by their permission, get in, &c., safe for this purpose.

3.   That the Northern railroad were in the rightful use of said road, &c., by the defendants' permission.

4.   That they agreed to take the plaintiff as a passenger.

5.   That their cars were standing in a place where they were permitted to take in passengers.

6.   That the plaintiff, by request of the Northern Railroad, went, as was necessary, there on the defendant's road, to get in said cars.

7.   That by the defendants' neglect, this place was not safe.

8.   That thereby the plaintiff fell and was injured.

This action is case founded upon a neglect of duty, and irrespective of any *contract;* and none need be shown, to maintain the action, nor to support the declaration, which alleges none.

1.   The first allegation is fully proved.   Rev. Stat. ch. 142, § 10 ;  Stat. Laws, ch. 128, § 15 ;  ch. 111, § 1.

2.   If the defendants permit passengers to come here, or license other railroads to take them here, they license such railroad to invite them and such passengers to come here. Passengers so coming are rightfully upon the Concord Railroad.

If a place where people so have the right to go, is unsafe through the defendants' negligence, they are liable.   *Birge* v. *Gardiner*, 19 Conn. Rep. 507 ;  *Bush* v. *Brainard*, 1 Cowen 78 ;  *Powell* v. *Deveney*, 3 Cush. 300.   And though the plaintiff were a trespasser in case of gross negligence of the defendants.   *Nurdin* v.  *Lynch*, 1 A. & E. (N. S.) 35 ; *Bird* v. *Hallowell*, 6 Bing. 628.

Though perhaps bound to prove the plaintiff's agreement for passage as involving the time, we need not prove his purpose in going there ; it may be regarded as surplusage. In this view, evidence that the defendants permitted this place to be so used, and were guilty of gross negligence, maintains the declaration, whether the plaintiff were a passenger or not.

Returning to the declaration as it stands, we say a liability for negligence is incurred by permitting this user. *Mayor* v. *Bailey*, 2 Den. 444, 445 ;  *Gardner* v. *Heart*, 2 Barb. S. C. Rep. 168.

This is irrespective of any contract or carrier liability, and depends solely on the general principles of common law.

The second allegation, then, avers the law correctly.

3. The third allegation sets out no contract between the roads and no carrier responsibility, but merely a license. From the use of said road, with the defendants' knowledge, a license may be presumed. *Doe* v. *Wilson*, 11 East 56.

Both roads were in the habit of taking passengers on their freight trains. The extent of this habit, whether or not it made them liable as carriers, is immaterial, for we only allege that the Northern Railroad transported passengers on the defendants' road by their license. The jury might well have found that the defendants knew this habit of the Northern Railroad. The fact existing, the proximity and connection of the roads gave the defendants opportunity to know it. *Both* roads so carried passengers. Also the jury might infer that passengers by the Northern freight trains sometimes went below Concord, for *other* passengers were so carried, in which case the defendants would, by the contract, receive part of the fare.

With this knowledge the defendants left the train here to *start*, making this a *starting place*, and thereby licensing the Northern Railroad to use it for all the usual purposes of a *starting place*. Where passengers are carried, the starting place is usually a place of embarkation. Northern passengers, embarking here, must be carried over a portion of the Concord Railroad; and a license for the one is necessarily a license for the other.

The conveyance of the Northern trains by the defendants, on their road, was a user by the Northern Railroad. *Jordan* v. *Fall River Railroad*, 5 Cush. 70, 71.

The jury might have found that Northern passengers sometimes went below Concord, and this would have maintained the allegation.

4. The fourth allegation is found; for the conductor is here agent of the corporation. Stat. Laws, ch. 1277, § 3.

5. By the defendants' permission, the train was here in its usual place, and this was its usual starting place. The defen-

Murch v. The Concord Railroad Corporation.

dants' license to use this as a starting place,.with knowledge
that the Northern Railroad carried passengers on these
trains, was a license to use this as a place for passenger re-
ception.   That the plaintiff went here to get on, is also evi-
dence that this was a place of embarkation.   It does not
matter that none were shown to have got on at the precise
spot of the accident; for the allegation respects the whole
place where the train was standing, and the jury are to say
whether this is part of the place of passenger reception—
and there is nothing to exclude it—or whether it made that
place unsafe.

6.   In the absence of direction, the agreement to take the
plaintiff was a request to him to go, as he did, to the usual
place.

7.   The defendants were bound to have the whole place of
embarkation safe.   This. night-train carried passengers.
There should have been provision according; but with this
pit in the midst, who could call it safe ?   By subsequently
planking this part, the defendants admitted it dangerous.
The place, its uses and conditions are shown, and the jury are
to pass on the question of negligence.   *Birge* v. *Gardiner*;
*Beest* v. *Railroad*, 19 Conn. Rep. 566 ; *Townsend* v. *Turn-
pike*, 6 Johns. 90.

8.   The plaintiff went to the proper place, and having no
directions, sought the proper person for them, and inquired
for him of the only man he saw, an officer of the train.
Following his directions, and on the place of embarkation,
which should have been all safe, in the darkness he fell and
was injured.   Here was no negligence.   It appearing where
he was, when, why and how, the question of ordinary care
is for the jury.   *Beatley* v. *Gilmore*, 16 Penn. Rep. 463.

Then viewing this declaration as simply alleging the de-
fendants' duty to keep this place safe for the Northern pas-
sengers, and their neglect, here is evidence for the jury to in-
fer a license to the Northern Railroad to take passengers
here ; and no matter why the plaintiff was here, if the defen-

dants were guilty of gross negligence; and of this the jury
are to judge, as all the facts, what the defendants had done
and left undone appears. On viewing the declaration, as alleg-
ing the plaintiff a passenger, here was competent evidence.
Then there was competent evidence to support every mate-
rial allegation. No matter as to its conclusiveness or weight,
or the balance of probabilities, there being such, the case
should have gone to the jury.

• II. There was not merely some competent evidence, but
such that the jury might reasonably have found for the plaintiff.

The plaintiff is entitled to all inferences that can legally
be made from the facts found. Story Pl. 72.c; 1 Saund.
Pl. & Ev. 495; *Dearing* v. *Smith*, 4 Ala. 432.

1. Necessarily, where two roads connect, there must be
a user of the track of one by the other. The defendants
left the train here for the Northern Railroad to take over
their own road, not on their own road to start there, but
" thence over " the Northern Railroad; and in so doing a
portion of the defendants' road must be used. No other start-
ing place appears, and the train was then starting here.

*Prima facie*, freight trains are not passenger carriers, but
railroads, being general carriers, may make them so; and
the case shows this the habit of both roads.

The only interpretation of the statements of the case that
can give them any sense, is that the offers were occasional,
but the habit of taking those offering, invariable. No re-
fusals appear. The amount of the business did not affect
its nature, and that was a question for the jury. *Brind* v.
*Dale*, 8 C. & P. 211.

The implied sanction in the instructions to conductors,
the sale of tickets, the reception of fares by the corporation,
show the habit authorized. To the main business on these
trains, they might well enough add passenger carriage. An-
gell, Carriers, 83, 608, 560, 90, n.; Story Bailments, 527;
*Dwight* v. *Brewster*, 1 Pick. 50; *Bean* v. *Sturtevant*, 8 N.
H. Rep. 146; *Bank* v. *Champlain Co.*, 23 Vt. Rep. 215.

If the habit was to carry only a class, they would be liable as carriers of this class.   Angell, 103–7.

The conductors, being judges of "cases of necessity," must be presumed to have done their duty.

But the instructions were not general; the habit was to take those "anxious to go," and no notice being shown, they are bound by the appearance.   Angel Cor. 560, 103; *Wayland* v. *Elkins*, 1 Stark. 272; *Bostwick* v. *Champion*, 11 Wend. 581.

The language is too loose to make a limitation.   Bound by law to carry as common carriers, could they limit their duty?   See *Moses* v. *Boston and Maine Railroad*, 4 Foster's Rep. 90.   The jury might then have found the Northern Railroad passenger carriers on those trains.   *Elkins* v. *Boston and Maine Railroad*, 3 Foster's Rep. 275.

Here is a fixed and definite starting place, and this is *prima facie*, the place of embarkation, and nothing shows it otherwise; and the Northern Railroad so used it by the defendant's permission.

2.   The defendants were bound to keep it safe for this purpose.   Making it by their contract a stopping place for the up trains, they were bound to make it safe for landing.   Angell, 523; *Brien* v. *Bennet*, 8 C. & P. 724; *McElroy* v. *Nashua and Lowell Railroad*, 4 Cush. 402.

So a ferry-man must keep his landing in repair.   *Willoughby* v. *Horridge*, 16 L. & Eq. 437; Angell, 514, 162, 221, 132; *White* v. *Winnisimmet Co.* 7 Cush. 159.

Much more is this to be required of railroad.   If by contract the defendants, receiving part of the fare, had undertaken to provide this starting place, the Northern Railroad, in procuring of the defendants this part of their carrier duty, may be deemed agents of the passenger.   *N. J. Steam Co.* v. *Bank*, 6 How. 344; *Skinner* v. *London Railroad*, 2 L. & Eq. 360; *Cumberland Railroad* v. *Hughes*, 11, Penn. Rep. 141; *Sanderson* v. *Lamberton*, 6 Bin. 129; *Waland* v. *El-*

*kins*, 1 Stark. 272; *Jordon* v. *Fall River Railroad*, 5 Cush. 70; Angell, 102, 442, 571, 572.

The public having no means of knowing their contracts, are not bound by them. Angell, 98, 99, 580; *Waland* v. *Elkins*; *Bean* v. *Sturtevant.*

Here the habitual appearance was of such an undertaking by the defendants, and they are bound thereby. *Stables* v. *Ely*, 1 C. & P. 614; *Bostwick* v. *Champion*, Angell, 560.

The liabilities of carriers depend not on contract, but on public duty, and the custom of the realm. Angell, 148–151, 404–6, 495; *Marshall* v. *York Railroad*, 7 L. & Eq. 519.

The duty, and therefore the responsibility, then arises, where the appearance is openly carried. It being the duty of the railroad to provide for safe embarkation, the defendants having apparently assumed this part of the carrier duty of the Northern Railroad, became so far carriers of the passengers and responsible, and are not discharged, because in fact they had no contract or remuneration, for the law binds them by the appearance they voluntarily exhibit. By their contract with the Northern Railroad they were bound to this. The statement of the case, that there was no contract as to passengers merely above Concord, can only mean that there was no specific mention of such, and no division of fares; else it is in conflict with the other facts in the case. The case shows that this was the starting place of the train by the contract, as well as in fact. Doubtless the advantages of the other business were a sufficient remuneration. The compensation was not more direct in *Dwight* v. *Brewster*, or *Bank* v. *Champlain Co.*

By the general law, and by the policy of this State, they were bound to this. Here they are public corporations, *Moses* v. *Boston and Maine Railroad*, and anywhere, especially here, owe duties to the public. Angell, 569.

Their responsibilities are commensurate with their duties. Story Bail. 620–2; *Word* v. *Turnpike*, 1 Spenc. 323.

They are the objects of many statute provisions. They

must permit the cars of other railroads to enter on their roads, when required by the legislature. Pamphlet Laws, ch. 128, § 15.

The road entered is exempted from payment of damages from the others' default, but not from its own, for which, impliedly, it remains liable. *Ib.*

They may contract with each other as to transportation, and all business connected therewith. Rev. Stat. ch. 143, § 10. See Pamphlet Laws ch. 953, § 8.

If a road were, by the proprietors' negligence, deficient in a rail or bridge, would not the proprietors be liable for injury thereby to one in the train of another corporation, lawfully using such road?

Towns and turnpike corporations are liable to stage passengers injured by defects in their highways. *Word* v. *Turnpike*, 1 Spenc. 323.

Otherwise no one would be liable. The road warranty cannot extend beyond their own road, for the Northern Railroad have no power to repair the defendants' track, and law will not impose the duty, when the power does not exist. Story Bail. 620.

The defendants are in charge of their own track, and bound by the common law to keep it in repair for their own trains, and by statute generally. Pamphlet Laws, ch. 128, § 16.

Passenger carriers being liable only for default, the Northern Railroad could well answer, we are in no default; we have no duty or power as to the Concord track. The law of carrier liabilities would be made of none effect; recklessness and wanton destruction of life and limb, would become an unfortunate accident, with nobody legally to blame. Such is not the policy of the law; it holds these public servants to a " strict account for the slightest neglect." Angell, 520, n.; 2 Greenl. Ev. 212, 213 ; *Farwell* v. *Boston and Maine Railroad*, 4 Met. 58; Story Bail. 524, 609–21.

At common law, the defendants are bound to keep their

road safe for all its legal uses.   Corporations must run their
roads by agents,—why not by the agency of an adequate
corporation ?   Where two roads connect, one must use the
other's track.   Our statutes recognize the use of the track
of one corporation by another as lawful.   The law cannot
have authorized the connection without contemplating a re-
sponsibility for due precautions.   And that responsibility
must be on the defendants, who alone have adequate power.
Story Bail. 620.   The corporation's duty to repair must be
commensurate with its duty to provide for carriage, and its
powers exercised.   By the Pamphlet Laws, ch. 128, § 16, it
is forbidden to discontinue its road, to neglect to keep the
same in good repair, or to omit any of its carrier duties
without the consent of the State.   Thus it is bound for all
statute and lawful purposes to these duties to the public.
Otherwise there is the risk, in which the public have so great
a stake, and no one bound to take precautions against it;
and this contrary to the whole policy of the law.   To hold
the Northern Railroad liable in damages would be compen-
sation, not precaution.   They cannot be punished for the
condition of the defendants' track, and if prior to 1850, they
were lucky enough to kill all the passengers, there would be
no liability, unless the defendants were held responsible for
the safety of their road, and so indictable.

The subsequent act of 1850, extending the liability of
railroads to cases of death, confirms this view.   Pamphlet
Laws, ch. 953, § 7.

The provision is not confined to the proprietors' trains,
but is general.   At common law no damages were recover-
able in case of death.   The legislature remedy this defect
by this general provision ; showing their notion that in other
cases the common law was sufficient, and the liability gen-
eral, and that, too, when under public law trains of one cor-
poration might then have been running on the road of an-
other.

3.   The defendants had not discharged this duty.   The

burden of proof is on them. *State* v. *Bangor,* 30 Maine Rep. 344.

Where a railway and its machinery are under the exclusive management of a carrier, an accident is *prima facie* proof of negligence. Story Bail. 621 ; Angell, 554 ; *Skinner* v. *London Railroad,* 2 L. & Eq. 360 ; *Carpue* v. *London Railroad,* 5 A. & E. (N. S.) 747.

This case may not fall precisely withing those, but the plaintiff, using the means provided by the defendants, in their exclusive control, and for which they are responsible, is injured. The parties are not in a position of equal right. The plaintiff can claim of them the highest diligence ; they of him only ordinary diligence ; and the latter is sooner to be presumed than the former. It is like a bridge falling, a plank breaking, or a platform giving way. See Angell, 520, 521 ; 2 Greenl. Ev. 221 ; *State* v. *Bangor, Pigott* v. *E. C. Railroad,* 3 M. G. & S. 228, 232, n.

The train usually extended over this pass, for it stood on that portion of the track where it was usually left. From the known regularity of railroads, to which they are bound by law, (Angell, 499 ; see Pamphlet Laws, ch. 1302,) and the course of business, we must infer that trains usually started here in the night, as this did. The plaintiff having the right to go in the train, had the right to go in any car. The train being all alike, can the court say, he had the right to enter the third car and not the seventh ?

Provision should therefore have been made for safe entrance, on the whole space then occupied by the train ; yet here was this pit in the midst of the place, that should have been all safe for entrance into night trains. It was negligence, and the grossest negligence. *State* v. *Bangor.*

4. The plaintiff was injured in consequence of this negligence. Going in search for the conductor, the plaintiff did not abandon his purpose of embarkation, for he did this, " going to take passage on the train." The accident being *prima facie* proof of negligence, it rests with the defendants

to excuse themselves. *Beatly* v. *Gilmore*, 16 Penn. Rep. 463.

The cases cited by the defendants being cases of equal relative right, where each party is bound to ordinary diligence, and the presumption is as great for one as the other, are not in point. *Railroad* v. *Grimes*, 13 Ill. Rep. 585.

The plaintiff may have been at the Passumpsic train, because there was no provision for embarkation; in which case the defendants are liable. *Lynch* v. *Nardin*, 1 A & E. (N. S.) 37.

But this is immaterial, for it was not the cause of the accident. It is not the plaintiff's fault, that he could not see this pass in the darkness. *Farnum* v. *Concord*, 2 N. H. Rep. 394; Angell, 538; *Thompson* v. *Bridgewater*, 7 Pick. 190; *Cobb* v. *Standish*, 14 Maine Rep. 200.

5. No fact discharges the defendants. Weston's testimony is incompetent. Besides, the object of the pit, however commendable, is quite irrelevant. The defendants were bound to have this landing safe, whether cattle went on the track or not. By a particular mode of executing one duty, they cannot get quit of another. If no passengers were shown to have got in at this precise spot, it is mere absence of testimony; besides, the right existing, it is no answer that it had not before been exercised. The various instructions to "some" of the conductors show only an attempt to limit their liability. They were contrary to the practice and appearance, were not made known to the public, or to the plaintiff, and had they been, would not have availed. *Moses* v. *Boston and Maine Railroad*. If observed and valid, they would furnish no defence. It is no justification to the defendants for breaking Murch's bones by their default in relation to embarkation, that after he had embarked he rode at his own risk, and the Northern Railroad might have broken his neck before he reached Franklin, with impunity. Such instructions could not excuse a case of so

Murch v. The Concord Railroad Corporation.

gross carelessness. *N. J. Steam Co.* v. *Bank,* Story Bail.
594–596.

Nothing appearing to discharge the defendants, we claim
judgment for the plaintiff.

*George & Foster,* with whom was *Quincy,* for the de-
fendants.

I. The defendants were not liable, in any event, to the
plaintiff.

It was no part of the duty which the Concord Railroad
owed to the public, as common carriers from Concord to
Nashua, that it should provide proper places for the North-
ern Railroad to receive passengers. The non performance
of any contract which it may have made to that effect, with
the Northern Railroad, is no breach of duty to the public;
and even if the defendants would be liable to the Northern
Railroad for the plaintiff's accident, yet there is no privity
between them and the plaintiff.

But the defendants made no contract which would make
them liable, even to the Northern Railroad, for the plain-
tiff's accident. The record states that there was a contract
in relation to passengers and freight passing from stations
on the Northern road to stations below Concord on the
Concord road and roads below, but expressly finds that there
was no contract between them in respect to passengers go-
ing upon the Northern road above, starting from Concord.
The only arrangement shown to have existed between the
two corporations pertinent to the present case, is, simply,
that the freight trains arriving on the Northern road at Con-
cord, were drawn by the Concord road over their road south,
and returned from the south to Concord, where they were
taken by the Northern Railroad over their own road, and
that, in accordance with this agreement, the freight train
upon which the plaintiff attempted to go, was standing
upon the track of the Concord road, ready to be taken by
the Northern road over its road north. From this simple

permission for the freight train to stand upon the Concord road until taken away by the engines of the Northern road, no semblance of a contract arises which would oblige the Concord road to keep their track in a state fitted for the reception of such passengers as the Northern Railroad should agree to carry over its road on such freight trains. If the Northern Railroad chose to transport passengers on freight trains, it did so at its own risk, and would have no right to call upon the Concord Railroad for damages imposed upon it by reason of such transportation. Nor does it even appear that the Concord road were aware of such transportation on the part of the Northern road. Although the Concord road itself " had been in the habit of occasionally transporting some passengers upon their freight trains when they were anxious to go," *non constat* but they might have been ignorant of any like practice on the part of the Northern road ; and without affirmative and positive proof of this, they certainly could not be held liable.

Neither have the defendants incurred any implied liability to the plaintiff, by reason of the previous instances of the conveyance of passengers upon freight trains.

Unless these instances were sufficient to render the Northern Railroad common carriers as to the plaintiff, he acquired no rights except under a special agreement entered into between himself and the Northern road ; and no rights against third parties accrued to him, whether under such contract he has obtained a right to compensation for his accident, or not.

But if these instances were such as to make the Northern Railroad incur the liabilities of common carriers as to the plaintiff, still there was no contract with the plaintiff, or duty to the public, to be implied, on the part of the defendants. They had made no contract with the Northern road in which they had agreed to provide accommodations for such passengers as the said road might choose to carry upon its freight trains ; and as they had made no such agreement,

they were under no obligation to warn persons taking such passage, that they must, in case of accident, look to the Northern Railroad only, for remuneration. Every person so taking passage had the fullest rights against the Northern Railroad, and the law will not impose a liability upon the defendants which they could not avoid except by specially notifying every one about to take passage. There had been no holding out on the part of the Concord road, on which the plaintiff had relied. He went there upon the faith of the Northern Railroad; upon their holding out to receive passengers at that place; and neither relied upon nor knew anything about the defendants or their road.

Neither is the custom of the Northern road thus to carry passengers brought home to the knowledge of the defendants.

2. But the Northern Railroad incurred no liability to the plaintiff as common carriers.

The characteristics of common carriers of merchandize, and the extraordinary duties and liabilities imposed upon them, were fully considered by this court in the case of *Elkins* v. *Boston and Maine Railroad*, 3 Foster's Rep. 275.

Common carriers of passengers are also held to the highest degree of diligence and care in the execution of their employment, and incur a much greater responsibility than carriers *pro hac vice*, and may undoubtedly be held to a stricter duty in the providing of depot accommodations for the reception of passengers. A special carrier for hire is responsible only for ordinary negligence, while common carriers are held to the very highest degree of diligence, and responsible for the slightest neglect.

But in order to impose this extensive responsibility upon the Northern Railroad, it must appear that they have held themselves out to the world as common carriers of passengers upon their freight trains. Their object, however, was not the transportation of passengers by these trains, but the

conveyance of goods. The cars upon the freight trains are not provided with conveniences for the reception and accommodation of passengers during their transit.

It does not appear that the Northern Railroad had held themselves out to the world as common carriers of passengers upon their freight trains. The custom and habit was not an unqualified one that would render them in any sense common carriers. The only custom shown, upon which to charge the Northern Railroad as common carriers, is that it was in the habit of occasionally transporting some passengers upon the freight trains when they were anxious to go, and this is further limited by instructions to some of the conductors not to permit it except in cases of necessity, and then only at their own risk. If they are to be charged as common carriers, it must be upon some custom; upon such a holding out as would oblige them to carry all persons who demanded a passage, and would have rendered them liable to the plaintiff if they had refused to carry him. There was no holding out of this sort, and the defendants were not in any sense common carriers of passengers upon their freight trains. *Fish* v. *Chapman & a.*, 2 Kelly, 351; *Funnell & a.* v. *Pettijohn*, 2 Har. 48; —— v. *Jackson*, 1 Hay. 19; *Lyon* v. *Smith*, 1 Mor. 184.

Nor did the Northern Railroad make a special contract with the plaintiff.

If such a contract was made, it was through the conductor of the freight train. In making such contract he was acting without the scope of his general authority as such conductor, and the Northern Railroad cannot be bound unless through some further implied authority from them; and any person dealing with him on the faith of such implied authority, must be presumed to know its nature and exact extent. *Fisher & a.* v. *Campbell*, 9 Porter, 216; Story on Agency, 133.

The extent of the authority which can be implied from the circumstances shown in the record, was only to permit

persons applying, who were anxious to go, to get upon the trains and ride. And whether the further directions to some of the conductors not to permit it except in cases of necessity, and then only at the passengers' own risk, are limitations binding upon those taking passage or not, there is certainly no authority to be implied, which would warrant the conductor in doing anything more than to permit the plaintiff to get on to the train when he applied to him at the time and place of starting. The record finds that the conductor, at another time and another place, the evening before the train left, agreed to carry the plaintiff. In doing this the conductor plainly exceeded his authority. The utmost of his power was to tell the plaintiff when the cars would start, and upon presenting himself at that time, to permit him to go upon the train, at which time the contract between him and the road would commence. This becomes apparent if we consider the effect of a refusal by the officers of the road, to permit the plaintiff to get upon the train. The plaintiff might have his action against the conductor for making a contract for which he had no authority; but such lack of authority would be evident if he brought his action against the company.

The contract, therefore, being without authority on the part of the conductor, and the time never having arrived when he might make a contract binding upon the company, no rights accrued under it, to the plaintiff, against the Northern Railroad.

3. If such special contract was made, the Northern Railroad were not liable under it, to the plaintiff.

The plaintiff having a presumed knowledge of the circumstances which gave the conductor authority to contract with him, dealt with him in reference to these circumstances. The custom which is the foundation of this action was that some passengers were occasionally transported upon the freight trains, but that some of the conductors were directed to state to passengers that they must go at their own risk.

There is no evidence of a custom of the conductors to carry passengers upon their freight trains, ever coming to the knowledge of the officers of the road, without such practice being strictly forbidden, unless under the above restrictions. Yet such evidence would be absolutely essential to the maintenance of the plaintiff's action against the Northern road. The fact that the conductors had universally carried passengers in this manner, would have been insufficient to charge the company; such acts being without their general authority as freight conductors, without some evidence, either positive or circumstantial, that the road had assented to and therefore ratified the same.

In the case of *Moore* v. *Tickle*, 3 Devereux, 345, Judge *Ruffin* says : " As to what the case calls proof of a custom, I must say that the understanding or misunderstanding of the law in a particular neighborhood, or by a portion of the people in a neighborhood, cannot enlarge the powers of a lackey into those of an agent, capable of controlling the contracts of a master."

There is in the case no evidence of any such assent on the part of the railroad; but, on the contrary, it is clearly apparent that whenever any such instance came to the knowledge of the company, they immediately directed the conductor not to permit it, except in cases of necessity ; and then only at the passenger's own risk. The very custom, therefore, which is the only evidence of the conductor's authority to make this special contract, and the sole custom which is brought home so as to bind the company, is one expressly excluding any liability on their part.

But admitting the conductor to have had the most ample authority, the contract cannot be construed as imposing a liability upon the Northern Railroad for the plaintiff's accident. The contract was to convey the plaintiff upon a freight train, which was to leave in the night, at the place of departure for freight trains. No especial accommodations were to be fitted up for the plaintiff. He was to take

the cars and the road as they were. The road were ordinary carriers, upon a special contract, and bound only to a reasonable exercise of skill, and liable only for their own negligence. *Brind* v. *Dale*, 8 Car. & Payne, 211; 1 Hay. 19, before cited.

If the Northern Railroad exercised an ordinary diligence, and were guilty of no negligence, they would not be liable to the plaintiff. If the plaintiff was injured in attempting to take the cars, that was his misfortune, and no negligence on the part of the company; it having made no contract, imposing upon it the duty of in any way altering the state of its road or the condition of its trains. If the plaintiff, upon getting upon the cars, had found no comfortable place to dispose himself, he had no right to complain. He had contracted to go upon a freight train, with freight train accommodations, and from a freight train starting place, and if he found a hole in the track, and fell into it, the case is precisely the same.

The Northern road having exercised all the diligence required of them by the contract, and having been guilty of no negligence, were not responsible to the plaintiff even under the contract.

4. The declaration does not allege that the plaintiff himself exercised proper care; neither does the case show that he in fact exercised such care.

The cause of action is the negligent state of repair of the road at the place where the plaintiff was to take passage. In order to recover, the plaintiff must show affirmatively that he was himself in the exercise of due and reasonable care at the time of the accident. *Farnum* v. *Concord*, 2 N. H. Rep. 394; *Lane* v. *Crombie*, 12 Pick, 177; *Smith* v. *Smith*, 2 Pick. 621; *Adams* v. *Carlisle*, 21 Pick. 146.

And such care being necessary and material to be proved, must be alleged in the declaration. Chit. Pl. 255.

But there is here no allegation in the plaintiff's declaration that he proceeded with due and proper care to take the

cars, nor does it appear from the case that such was the fact. It appears that the plaintiff before two o'clock in the morning, it being then dark, going to take passage, walked along to the Passumpsic train, which was attached to the lower end of the Northern train, inquired for the Northern conductor, and on being informed that he was at the head of his train, passed up the track, and, on coming to the passway, fell through it. These are all the facts appearing, in relation to the manner of the accident, and have no tendency to prove care on the part of the plaintiff. The whole circumstances shown in the record would seem to prove a want of care. By a reference to the plan, it will be evident that the only proper way to approach the cars was near the head of the train, and that the plaintiff must either have once passed down over the passway to the foot of the train, or else approached it by some unusual means of access at the south end of the train, in either of which cases there is such an amount of carelessness shown on his part as would prevent a recovery.

BELL, J. It is never necessary to state the general law of the land in any pleading. The courts are bound to apply the law, as they know it to be, to the facts stated in the pleadings, without regard to any erroneous statement of the law made in those pleadings. Incorrect statement of the law may be cause of demurrer, but if no demurrer is interposed, the party is in no way bound by that statement, which will be merely disregarded.

Upon a careful consideration of the statement of the legal obligations of the defendants in this case, made by the plaintiff, in his declaration, we are unable to assent to his idea of the law in two particulars. If we are right in our impressions as to these, the plaintiff's claim will be left without any legal foundation, whatever opinions the court may entertain as to the other points raised in the very ingenious argu-

ment for the plaintiff. As to those points, for this reason, we have not felt it necessary to inquire.

The particulars referred to are these : first, that upon the facts alleged, the defendants owed a duty to the plaintiff; and second, that they were bound to furnish a safe place for passengers to get into the cars, at every place where they, or other corporations using their road, receive and take in passengers.

The relation of the Northern Railroad, who had agreed to take the plaintiff as a passenger in their cars, to the Concord Railroad, the defendants, is thus alleged : " At the time of committing the grievances hereinafter mentioned, and before and since, a certain other railroad corporation, called the Northern Railroad, were in the rightful use of said Concord Railroad, by permission of said Concord Railroad Corporation, for the carriage and conveyance of passengers in the cars of said Northern Railroad.

The evidence in the case was in substantial agreement with these allegations.

The effect of these relations upon the rights of the railroads may be first looked at. And we think it clear that, if the Northern Railroad ask and obtain the permission of the Concord Railroad to use their road, that permission, given without any further actual contract, draws after it no obligation to put the road in repair, or to provide new or different landings or starting places, or, indeed, to make any change in the arrangements of the road whatever, or alterations in the road itself. These railroads stand in the same relation to each other as two individuals, one of whom has a path through his own land, or a privilege for himself and such as may obtain his permission to use it, of a way through another man's land, and the other has obtained permission to use such path or way for his own business. There surely could not be any pretence that the owner of the land or way, in such case, was bound, in consequence of such permission, to make such way safe, any more than

the owner of a wood lot, who had given a neighbor leave to haul his wood across the lot, would therefore be bound to make him a good and safe way.

If, then, such permission implies no duty to the Northern Railroad to make or alter their landings, it is difficult to see on what principle they can be held to have assumed any duty of that kind to the passengers in their cars. Any third person who enters upon the railroad, of which the defendants are alleged to be " the owners and proprietors, at any other place than those provided for entering upon their cars, or for any other purpose than to take his place as a passenger in those cars, is *prima facie* a trespasser ;" and if his purpose is to enter the cars of the Northern Railroad, as a passenger, his only claim of a right to do so is under the reasonable construction of the permission granted to that corporation to use the Concord Railroad, for the convenience of themselves and such passengers as they might desire to convey in their cars. That permission could not, of course, extend further in the case of such passengers than in the case of the railroad itself,—a permission to use the railroad as it is.

If the use of the road was granted to the Northern Railroad upon a contract, by which the Concord Railroad bound themselves to make their road such that passengers may safely go to and get into the cars, at all such places as either of those railroads received passengers, it is not perceived how such a contract could give to any passenger, who might suffer damage from their neglect to perform their contract, any right of action resting on such contract. Parties who contract are answerable to each other for the breach of their stipulations, but not to third persons. It has never been supposed that a passenger in a stage coach, who had been injured by an accident resulting from defects of the materials or unfaithfulness of the construction of it, could maintain an action against the coachmaker, who had warranted its quality to the carrier. His remedy is against the carrier,

and the maker is liable to the carrier alone. *Winterbottom* v. *Wright,* 10 M. & W. 109, and see *Thomas* v. *Winchester,* 2 Seld. 397. In the present case, supposing a contract between the two railroads, it seems quite as clear that the remedy of the sufferer is against the company with whom he has contracted. By using the railroad of another corporation as a part of their track, whether by contract or mere permission, they would ordinarily, for many purposes, make it their own, and would assume towards those whom they had agreed to receive as passengers, all the duties resulting from that relation as to the road ; and if accident resulted to such passengers from any failure of duty of the owners of the road, for which they would be responsible if the road was their own, their remedy over would be against the owners. No privity whatever would exist between the passengers of the Northern Railroad and the Concord Railroad, in consequence of any contract between the two railroads.

It has been said, in the argument, that every ferryman is bound to have safe and secure landings, and we think the principle is clear to a certain extent. But the analogy between the case of the ferry and the railroad does not support the argument founded upon it. The railroad companies support two characters; they are like canal companies, the owners of artificial ways, which, as such owners, they are bound to keep in suitable repair, for the accommodation of those who have by law the right to use them. They are also common carriers, transporting passengers over their own roads, and occasionally over roads owned by others. As common carriers they are, like ferrymen, bound to transport their passengers safely, and bound to provide suitable access to their ferries or ways. If they are, at the same time, carriers and owners of the road or ferry, they are, of course, bound to keep them in good repair, but they owe this duty to those whom they contract or undertake to transport, as part of their agreement to carry safely. If a ferry-

man, for his own convenience, obtains permission of the
owner of a private landing to land his passengers there,
rather than at his own landing, the owner of such private
landing does not, by his mere permission to land there, en-
gage that the landing is either suitable or safe; he does not
bind himself to alter or repair it, and he is not responsible
for any injuries that may result either from original defects
or neglect to repair. The permission allows its use in its
present state, but it imposes upon the owner no duty either
to the ferryman or his passengers. The railroad company
who obtain consent of another road to use their track, like
the ferryman who gets leave to use another landing, owe a
duty to their passengers, that they shall be carried safely, so
far, as it is sometimes loosely said, as human caution and
foresight can accomplish that object; but they have no
claim upon those who give such permission, to insist that the
landing or track shall be safe, neither have their passengers
any such claim.

If the owner of the landing or track, for a proper consid-
eration, lease the landing or track, there might, under some
circumstances, be an implied contract that the property was
suitable for the use for which it was hired. And in such
case, and in the case of an express contract to make them
suitable, the letter would be responsible to the hirer, for any
damages that might result from its insufficiency or want of
repair. But the individual who sustained damage from
these causes would have no remedy against the letter, be-
cause there is no contract or duty existing between them.
His remedy would be against the party with whom he con-
tracted.

In the views thus presented, we have considered the ques-
tion upon the facts alleged in the declaration, which states
that the defendants are owners and proprietors of a railroad,
and contains nothing from which it can be inferred that
their rights or their duties are in any respect different from
those of the owners of any private property, unless it should

be thought that the idea of a public way, and of the duties of those who are bound to maintain public ways, is comprised or implied under the word "railroad." A *highway*, *ex vi termini*, is a public way, as to which certain duties are impliedly imposed by law upon those who are charged with its support and repair. But it seems to us yet to be settled that the mere term railroad or railway has such signification. Railroads, over which all have equal rights to travel and to run their engines and trains, are, of course, public ways; and railroads, over which all who come have a right to be transported, as all have a right to be ferried across a river, will, perhaps, fall within the same class; but it is understood that there are many railroads abroad which are constructed and used exclusively for the private purposes of the companies who own them, as for transporting coal from the mines to places of shipment, ore to the furnaces, and the like; and probably they are to be found in our country constructed and used exclusively for private purposes like these. In many of our cities and manufacturing places, it is supposed there are many miles of railroads, built and used only for the accommodation of the business of their owners. If our impressions in this respect are correct, no public duties result from the fact that a party is owner of a railroad. And if it could be even inferred from the nature of its chartered powers that the Concord railroad was a public way, as was held in *Greeley* v. *Concord Railroad*, 3 Foster's Rep. 237, or if the court were bound to take notice that any such corporation had become a public corporation, by adopting the act of 1844, (Comp. Stat. 340,) it would not follow that all their track is a public way, since it is supposed that many railroad companies, and from the plan exhibited, this among others, have many private tracks, designed and used solely for the private business of the company.

If we were, however, to understand that the Concord Railroad Company is the proprietor of a public road, which

they were by law bound to make and keep in repair for the use of all who have occasion to travel and pass upon it, it might be reasonably argued that their duties were closely allied to those of towns, who are bound to keep in repair the public highways within their limits, and to those of turnpike and bridge companies, who are bound to keep in repair their roads and bridges. And as to these, we are not aware that it has been doubted that they are responsible to every person who sustains damage by reason of the defects of their road, whether he was passing on foot or riding in his own carriage, or that of any third person, in the due exercise of his right as a member of the community. But it is to be borne in mind that there is a well settled distinction beween highways of different classes, and that the liability of those whose duty it is to keep in repair public highways, is limited by the nature of those ways. Thus no responsibility attaches to the party bound to support a footway, that it is not suitable for horses or cattle, nor to the owner of a pack and prime way, for persons on foot and on horses, that it is unsuitable for carriages; and upon the same principle the owners of a public railway are chargeable with no fault, if it is not suitable for foot passengers, or for horses, cattle or carriages, nor even if it is so constructed as to be dangerous to be used for such purposes. As to their tracks, it is supposed their only obligation is to make and keep them suitable for the use of railroad carriages.

To render such tracks useful, either to the railroad companies or to the public, it is obviously necessary that they should be accessible for those who have occasion to use them, by proper connections with the public ways, and there necessarily results, as we apprehend, a duty upon the railroad companies to make suitable ways or places of access to their road, for persons who have occasion to get upon their cars, or to put merchandize upon them to be carried. Originally the question how many such places of access to their tracks should be made and maintained, and where they

should be placed, was left by the Legislature to the self-interest of the companies. By the act of 1850, ch. 983, § 6, it is made their duty, under severe penalties, to establish reasonable and proper depots and stopping places for the public accommodation. This statutory declaration of the duty of railroad corporations, is in exact conformity with the rule of the common law, regulating the duty of towns as to the manner of constructing highways, and, it seems to us, the rule of good sense and reason. They are to establish such depots and stopping places,—places where those who have occasion to use the road may have access to it,—at such places as are reasonable and proper for the public accommodation, and they are to be constructed and fitted as the public highways are, in such a manner as is reasonable and proper for the public convenience. If the amount of business to be done at a particular depot is large, or the number of persons to be accommodated is considerable, the arrangements should be on a scale so extensive as to meet the wants of the community. If the number to be accommodated is small, the accommodations may be narrowed in proportion, without giving to any person any just ground of complaint. Where no persons could usually be expected to be taken on board the cars, it could not be either reasonable or proper that any preparations should be made. Nor would it alter the duty of a railroad corporation in this respect, if, as a matter of convenience to others, they should occasionally take up or set down a passenger at a point where no preparation had been made for his accommodation. It would seem to us very clear that they cannot be held to make every part of their road suitable for landing or taking passengers, because they may at some time have occasion to take in or set down a passenger at any place.

There can, we think, be no doubt that it was the duty of the railroad corporation to have all their landings and places of receiving passengers so constructed, that persons going to and from the cars as passengers, may pass with safety. But

the injury in this case arose not from the defective construction of any landing, at the points where passengers usually get in or out of the cars. It is not alleged in the declaration that the place where the accident occurred, or the place where the cars into which the plaintiff desired to get were standing, was a common landing, or a place where passengers *usually* enter or leave the cars. All that is said and all that appears by the case to be proved is, that the cars were standing at a place where, by the permission of the defendants, the Northern Railroad took and received passengers to be conveyed in their cars. There is nothing which imports that it was a place where the companies usually or frequently took in passengers; aad we may just as reasonably suppose that the qualifying words, to be understood before "*took in and received passengers,*" were "*once before,*" or the like, as "*often or commonly.*"

The question, then, does not relate to the usual landing places, but to the principle which governs the duties and obligations of railroad companies as to the safety of passengers, at those points where they, for the accommodation of a particular individual, may take him in as a passenger or permit him to leave the cars.

The rule of duty of towns is to keep their roads in such state of repair as may be necessary for the travel passing upon them.

A similar principle, it seems to us, must govern the case of railroads, as it regards the passage to and from the tracks. Where there is usually and habitually some passing, the access must be such as may safely accommodate the passengers who may be reasonably expected to frequent it. But it cannot be necessary to make such preparations and take such precautions as would be necessary at the great stations. And, on the other hand, at places which are in no sense passenger stations, where there is no reason to expect any body to pass, there is no necessity, and, therefore, no duty to make any preparations or to adopt any precautions.

There is no obligation to do any thing, either for the convenience or safety of passengers, at points where none are expected to pass. The general duty alleged in the writ is not imposed by law, and the company were not bound to make access to their road safe at every point where they might in point of fact take in or set down a passenger.

The claim in this case, as stated in the writ, and as attempted to be proved upon the trial, rests upon the idea that there is no difference, in point of law, between the duties of the railroad company, at places where passengers may be occasionally received on board of freight trains, and those where they are usually received in the passenger trains. But this seems to us entirely unsound. We suppose it makes no difference that the Concord Railroad and the Northern Railroad are common carriers of passengers by their passenger trains, and of freight by their freight trains. The stage proprietor is a carrier of passengers by his coaches, but he does not thereby become a common carrier of passengers by his baggage wagons, if he carries on that business at the same time. Both the companies and the individuals, in these cases, are bound to their customers by the same duties relative to their freight trains and baggage wagons, and have the same rights as to the roads over which they travel, as if they had no connection with the business of common carriers of passengers.

As to common carriers of freight, it would be the duty of the railroad to furnish safe means of access from the public ways to their cars, for loading and unloading merchandize. The question here raised is, whether there is any duty upon them to furnish safe means of access for passengers upon those trains.

The first question which arises upon the point is, whether the railroad companies have made themselves common carriers of passengers by their freight trains, because it is not to be questioned that they owe a duty to provide access for those passengers in proportion to the occasion that calls for

it.   It is very clear that a wagoner, who occasionally car-
ries a passenger upon his wagons as a matter of special ac-
commodation and agreement, does not thereby become a
common carrier of passengers.   He only becomes such when
the carrying of passengers becomes an habitual business.
Upon the evidence stated in this case, that " both roads had
been in the habit of *occasionally* transporting some passen-
gers upon the freight trains, when they were anxious to go,"
we think we should not be justified in saying that they were
common carriers of passengers upon their freight trains.
*Elkins* v. *Boston and Maine Railroad*, 3 Foster's Rep. 275.
And it seems to us clearly that, if they were not such com-
mon carriers, they were not chargeable for the want of ac-
commodations such as would be otherwise justly required.

The party who makes an arrangement to be carried on a
baggage wagon or a freight car, impliedly agrees to accept
and be satisfied with such accommodations, as it regards
carriages and seats and places of entering and leaving the
carriages, as may be found in the usual course of the busi-
ness.   If the cars, at the time of his agreeing for his pas-
sage and taking his seat, are at a merchandize depot, he is to
be satisfied with such means of entering the cars as are pro-
vided for rolling in the cask or box on which he is to be con-
tented to take his seat, if nothing better offers.   If the cars
are at the time standing upon a part of the track where
there is no provision for landing or receiving either goods or
passengers, he is to be satisfied with such means and facili-
ties as may casually be within his reach.   The company,
considered as owners of the road or as carriers, are not, in
either case, bound to make landings, or any provision what-
ever for the reception or discharge of passengers where none
are expected to be.   The duties and obligations of parties
are construed reasonably, with reference to the nature of their
business.   We understand that the freight trains upon these
roads sometimes amount to fifty or more cars, and extend
in length to two thousand feet or more, and that it depends

upon what is, in this respect, mere matter of accident, the arrangement of the loading, where a place may be found for the casual passenger, who may be forced to adopt this way of travelling. It may be at any part of the train, and provision must be made, if at all, for a safe entrance at every part of the train and at every part of the road where a passenger may desire to be put on board. A rule like that must be equivalent to a refusal to allow any passengers to be carried in this mode, unless they are at hand to take their places at the regular depots, where the trains are loaded. It would be of mischievous consequence to adopt a rule which would deprive the railroad companies of the power to accommodate those whose occasions compel them to resort to these undesirable modes of conveyance.

Upon the facts, then, as they appear in this case, we are of the opinion that the railroad company was not bound to make any provision for the accommodation of a passenger like the plaintiff, beyond those ordinarily required by their own business, nor to have their road so constructed that he could safely go to and get into the cars. But that from the nature of the engagement the plaintiff agreed to be satisfied with the state of things as it existed, if it was safe and suitable for a freight train.

There is a further principle, applicable to this case, which stands in the way of a recovery by the plaintiff. It is well settled at common law, whatever doubts may exist as to the justice of the rule, that the party who claims damages for the neglect of the duty of others to exercise proper care, cannot recover, if it appears that the injury he sustained, was in any degree caused by his own negligence or want of due care. The facts stated show that the plaintiff was upon the Concord Railroad track, several hundred feet below the freight depot, at two o'clock at night. The night was dark, and he knew nothing of the road, and was without any light or guide. He was at the southern end of a long train, and having learned that the conductor of the

Northern train was at the head of the train towards the north, he passed up the track, which was on a high embankment, and fell into a passway built over a public road, left open at the top, that it might serve as a cattle-guard. If the case had been submitted to the jury, it would have been their duty to decide whether this was negligence in the plaintiff, and if so, whether it in any degree coöperated to cause the damage he sustained. Referred to us, it seems impossible to hold it to have been done in the exercise of that due care which men in general exercise in transacting their own business, or even of that slight care which inattentive men ordinarily take in cases involving their lives or limbs. This, however, is a question of fact, on which a jury would, of course, judge for themselves.

The action, then, cannot be maintained upon the facts presented by the case, and there must be

*Judgment for the defendants.*